UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **VICTORIA REIBLE,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 04-2039 |
| **ILLINOIS I.O.O.F. OLD FOLKS HOME,** ) | |
| d/b/a Odd Fellow-Rebekah Home, ) | |
| ) | |
| Defendant. ) | |

## O R D E R

In January 2004, Plaintiff, Victoria Reible, filed a complaint in the Fifth Judicial Circuit Court, Coles County, Illinois, against Defendant, Illinois I.O.O.F. Old Folk's Home d/b/a Odd Fellow-Rebekah Home. In February 2004, Defendant filed a Notice of Removal (#1), removing the case to federal court. Federal jurisdiction is based on federal question (28 U.S.C. § 1331) because one of Plaintiff's claims is based on a federal statute. The parties have consented to jurisdiction by a federal magistrate judge.

In August 2005, Defendant Illinois I.O.O.F. Old Folk's Home (hereinafter "Home") filed a Motion for Summary Judgment (#27). After reviewing Defendant's motion and the parties' memoranda and evidence, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#27)**.

### I. Background

Plaintiff's complaint alleges two counts as follows: In Count I, she alleges that her employment was terminated because she filed a workers' compensation claim. In Count II, she alleges that Defendant terminated her employment in violation of the Americans with Disabilities Act (hereinafter "ADA") (42 U.S.C. § 12101, *et seq.*).

The undisputed facts are as follows: Plaintiff worked full-time for the Home as a licensed practical nurse from November 1995 until August 8, 1997. Gail Price was director of nursing for the Home from 1981 to 1998. Lualyce Brown was administrator of the Home at the time

Plaintiff's employment was terminated. Ms. Brown died in 2001. In 1997, Sharon Weger worked for the Home handling workers' compensation claims.

Defendant's attendance policy provides, in pertinent part, as follows: "Being late or absent may, in the absolute discretion of management, be cause for discharge. If an employee is absent for three (3) days without giving notice, he/she will be considered to have 'resigned without notice' and will be removed from the payroll." (Policy manual, p. 24.) When she began working at the Home, Plaintiff signed a form acknowledging that she had read and understood the Home's policy manual.

When Plaintiff began working for the Home in 1995, she was restricted from lifting over fifteen pounds. She signed a form titled "Job Description" that stated, "Per Conversation with Gail [Price], I have limitation of lifting 15# of weight." Defendant accommodated this restriction.

On May 21, 1997, Plaintiff injured her back while working. On May 23, 1997, Plaintiff called the office of her primary care physician, Dr. Kim Fehrenbacher. He told her she could continue to work the week of May 27 and she should follow up with his office during the following week if her back did not improve. (#30, p. 4, Ex. B.) On May 23, Dr. Fehrenbacher faxed a note to the Home that stated in part, "[Plaintiff] may work this weekend," and also stated that she should avoid lifting greater than twenty pounds and should avoid pushing, twisting, pulling, or straining. (#30, p. 8, Ex. D.)

Following her injury, Plaintiff went to Dr. Fehrenbacher's office for treatment on a regular basis. On May 27, Dr. Fehrenbacher's clinical notes indicate that Plaintiff should not work until June 2. (#30, p. 4, Ex. B.) The same day, the doctor's office provided a note stating that Plaintiff could not work until June 2, 1997. (#30, p. 5, Ex. C.) On June 2, Dr. Fehrenbacher's clinical notes state, "No work until results of MRI are known and symptomatic improvement." (#30, p. 6, Ex. E.) On June 9, the clinical notes state that Plaintiff underwent an MRI and is still having back pain. Dr. Fehrenbacher referred her to Dr. James Kohlmann for an appointment on June 17. (#30, p. 6, Ex. E; p. 10, Ex. F.)

On June 17, 1997, Dr. Kohlmann issued a report stating that Plaintiff was capable of returning to work with modified duty. (Kohlmann report dated June 17, 1997.) On June 23, Dr. Fehrenbacher's clinical notes state that Plaintiff "[i]s seeing Dr. Kohlmann who told her she could go back to work. She was quite surprised and uncomfortable with that as she is still having pain that awakens her at night . . . . Will try to get her back to work for at least part time after her next appt. in 2 wks from this." (#30, p. 7, Ex. E.) In an undated note, Dr. Fehrenbacher stated that Plaintiff should "continue not working for 2 more weeks effective until 7/7/97." (#30, p. 11, Ex. G.)

On June 30, 1997, Plaintiff filed a worker's compensation claim against Defendant.

On July 7, Dr. Fehrenbacher's clinical notes state that Plaintiff "[d]oes not feel she could return to her duties as a nurse. Does not feel she would be able to sit for extended periods of time and chart." (#30, p. 7, Ex. E.) He also provided a note for the Home that stated, "Victoria Reible will be unable to work until her next appt 7/28/97." (#30, p. 12, Ex. H.)

On each of the above dates (May 27, June 2, June 9, June 23, and July 7, 1997), Dr. Fehrenbacher provided Plaintiff with a note stating she should not work until her next appointment. Plaintiff gave those notes (or copies of them) to the Home.

On July 17, 1997, Dr. David Fletcher performed an independent evaluation of Plaintiff and issued a report stating that Plaintiff was capable of returning to work with modified duty. (Fletcher report dated July 17, 1997.) After the Home received Dr. Fletcher's report, Sharon Weger sent Plaintiff a letter asking Plaintiff to return to work with modified duty and to contact Defendant by July 23, 1997, regarding her work hours. (Weger letter dated July 18, 1997.) Plaintiff received this letter. (Reible dep., p. 47.)

On July 23, Dr. Fehrenbacher's clinical notes state that Plaintiff "called office yest. requesting to be referred to Dr. James Harms orthopod @ Carle instead of Dr. Kohlmann." (#30, p. 9, Ex. E.)

3

On July 23, 1997, Plaintiff called Gail Price and told her she had an appointment with Dr. Fehrenbacher on July 28, 1997. (Reible dep., p. 48; Price dep., p. 57.) Plaintiff testified that she told Price that she "wasn't able to come back to work and that [she] was coming in with a note from Dr. Fehrenbacher." (Reible dep., p. 50.) Price testified that she told Plaintiff to contact her after the appointment to let her know about the results of the appointment or to bring her any notes from Dr. Fehrenbacher. (Price dep., p. 57.)

On July 28, Dr. Fehrenbacher's clinical notes state that Plaintiff was "feeling better. Would like to return to work." In addition, the notes state as follows: "[Plaintiff] Did not see Dr. Kohlmann and today says she would like to postpone seeing Dr. Harms . . . . [Plaintiff] [h]as seen Dr. Fleisher . . . [and she] [a]nticipates having functional assessment exam by him on Wed (in 2 days) and returning to work with limited duty then . . . . Anticipate patient will be returned to work later this week by Dr. Fleisher as noted above." (#30, p. 9, Ex. E.) Dr. Fehrenbacher testified that, at the July 28, 1997, appointment, he did not provide Plaintiff with a note excusing her from work; he also testified that a work release notice would not have been consistent with his clinical evaluation as indicated by his notes. (Fehrenbacher dep., p. 14.)

On July 28, 1997, Plaintiff did not contact Gail Price about her July 28 doctor visit and Dr. Fehrenbacher's recommendations. According to Price's contemporaneous notes, Plaintiff did not contact Price or anyone at the Home on July 29, July 30, or July 31. (Price dep., pp. 30-31.) On July 30, Gail Price called Plaintiff and left a message requesting information regarding the outcome of Plaintiff's July 28 appointment with Dr. Fehrenbacher. In her affidavit, Plaintiff testified that she received the message. (Reible aff., ¶ 11.)

Plaintiff testifies that, on August 1, she gave a note to the front desk girl at the Home to be delivered to Gail Price. (Reible dep., pp. 50-51.) The note was not from Dr. Fehrenbacher; it was from Plaintiff and it informed Price that Plaintiff had not been released to return to work. (Reible aff., ¶ 12.) Gail Price testified that she did not receive any note. (Price dep., p. 35.)

On August 8, Ms. Brown sent Plaintiff a letter stating as follows:

> After several unsuccessful attempts to reach you by our Gail Price, RN, DON; as of this date, your position with Odd Fellow-Rebekah Home is being terminated. Enclosed please find a copy of our ABSENT WITHOUT GIVING NOTICE Policy (page 24 of employee policy book).  August schedule shows your absent without notice status on August 1, August 4 and August 6.  At 4:00 p.m. on July 30, 1997 a message was left on your answering machine by Gail Price, RN, DON for you to contact her with information of the last doctor's appointment.  To date, no contact has been made by you.  It is also our understanding that you chose not to attend your functional evaluation on July 30.
> We ask that you return your time card and keys to the Harmony Center in the enclosed self-addressed stamped envelope.

(Brown letter dated August 8, 1997.)

Gail Price testified that, at the time that the Home discharged Plaintiff, she understood that Plaintiff had a back injury and that she would have been able to work with some restrictions on lifting and bending.  (Price dep., p. 47.)  Price testified that Lualyce Brown, the Home's administrator, made the decision to discharge Plaintiff's employment.  (Price dep., pp. 30, 33, 39.)  Price also testified that she would have discussed Plaintiff's status with Ms. Brown.  She testified that she knew that Plaintiff would be terminated because she had missed three days of assigned duties.  (Price dep., p. 40.)  The following colloquy occurred at her deposition:

> Q: Was she terminated because she had filed a worker's compensation case?
> A:  No.
> Q. How do you know that?
> A. Because I would have had input in that.  As far as her being terminated, we went by the policy, and the policy says if you miss three days, no call/no show, you will be terminated.
> Q. Okay.  But you didn't make that decision to terminate her.  Is that right?
> A. No.
> Q. Okay.  So how do you know Ms. Brown, what her decision making was?
> A. Because she followed the policies.

(Price dep., pp. 42-43.)  Price testified that the Home applied the no call/no show termination policy across the board.  (Price dep., p. 51.)

On August 11, 1997, Plaintiff "attempted to deliver an off-work prescription to Defendant" from Dr. Fehrenbacher and was told at that time that her employment had been

terminated.  (Reible aff., ¶ 13.)  She subsequently received the August 8, 1997, letter from Ms. Brown.

On August 11, 1997, Dr. Fehrenbacher's clinical notes state that Plaintiff "[d]eveloped headache and had to cancel her appt. with Dr. Fleisher.  They attemped [(*sic*)] to reschedule but cancelled again.  Consequently, has not returned to work and states would need release from me . . . .  Refer to Dr. Kelafont for functional capacity testing and advised regarding returning to work."  (#30, p. 15, Ex. K.)  The same day, the doctor's office wrote a note that stated, "Pt. is to be off work until further notice."  (#30, p. 17, Ex. M.)  On August 12, Dr. Fehrenbacher's notes state, "Received call from Dr. Kelafont today who diagnosed patient to have sacral iliac problem and is sending her for physical therapy . . .  Believes she may be able to return to partial duty soon if aggreeable [(*sic*)] with Odd Fellow Rebekah Home."  (#30, p. 15, Ex. K.)

On September 15, Dr. Fehrenbacher wrote a letter stating as follows:

To Whom It May Concern:
Vicky Reible has not ben [(*sic*)] released to return to work by me or Occupational Health physician at Sarah Bush, Dr. Kelafont.  She has been referred back to Dr. Harms and has an appointment at the earliest available date on 10/20/97 and should await his advice before release for work or further treatment or studies as suggested by him.

(#30, p. 18, Ex. N.)

## II.  Standard of Review

In her memorandum, Plaintiff has articulated the incorrect standard for a summary judgment motion.  *See* Plaintiff's Response to Motion for Summary Judgment, #30, p. 7, ¶ 3, citing *Miller v. J. M. Jones Co.*, 587 N.E.2d 654, 658 (Ill. App. Ct. 1992) (articulating the standard for a motion to dismiss).

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the Court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists.  *Celotex,* 477 U.S. at 323.

The Court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, she must go beyond the pleadings and support her contentions with proper documentary evidence.  *Celotex,* 477 U.S. at 322-23.  A scintilla of evidence in support of the nonmovant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. at 250.  The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.*  "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

### III.  Analysis

Defendant argues that the Court should grant summary judgment in its favor on the retaliation claim and the ADA claim(s).  Plaintiff's argument in response consists of seven numbered paragraphs, devoid of any reference to evidence.  Three paragraphs cite case law and one of those articulates the standard for a motion to dismiss which is irrelevant at this stage of the litigation.  The remaining four paragraphs make conclusory statements that "there is a genuine issue of material fact" regarding various issues.  (#30, ¶¶ 4-7.)  Pursuant to Rule 56(b), when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that a genuine issue exists as to any material fact and that the moving party is not entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986).  With that standard in mind, the Court considers the parties' memoranda.

### A.  The Retaliation Claim (Count I)

Regarding Count I, Defendant argues that the Court should grant summary judgment in its favor because Plaintiff failed to present evidence that Defendant discriminated against her because she filed a workers' compensation claim.  Defendant has stated that it discharged Plaintiff for violating its no call/no show policy by failing to return to work after Dr. Fletcher and Dr. Kohlmann reported that she could return to work with modified duties.

To establish a *prima facie* workers' compensation retaliatory discharge claim, a plaintiff must show the following:  (1) She worked for defendant before her injury; (2) she exercised a right provided by the Workers' Compensation Act (820 ILCS 305/1 *et seq.*); and (3) her discharge was causally connected to the filing of the workers' compensation claim.  *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir. 1996).  Defendant does not dispute that Plaintiff has satisfied the first two elements, so the Court need only focus on the third element--whether Plaintiff has shown the necessary causal connection.

The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee.  *Meister v. Georgia-Pacific Corp.*, 43 F.3d 1154, 1160 (7th Cir. 1995).  Thus, once the employer produces a valid reason for discharge, the employee must show that the purportedly valid reason was pretextual.  *Id.*  In order to establish pretext, the plaintiff can present evidence that shows either that the employer's proffered reason has no basis in fact or that it did not honestly believe that it fired the plaintiff for its proffered reason.  *Fernbach v. Dominick's Finer Foods*, 936 F. Supp. 467, 472 (N.D. Ill. 1996).

As noted above, Defendant has stated that it discharged Plaintiff for violating its no call/no show policy.  In response, Plaintiff states that a jury could find that Defendant's actions of terminating her employment were pretextual and in retaliation for Plaintiff's filing a workers' compensation claim and that Defendant discharged her because of her disability.  Plaintiff also

states that a genuine issue of material fact exists regarding the validity of her termination. She provides little in the way of evidence or argument to support her conclusions.

Plaintiff relies on Defendant's statement in Ms. Brown's letter to establish a causal connection between her worker's compensation claim and her discharge. That letter states that Plaintiff had been discharged as a result of her violation of the no call/no show policy. The letter also states, "[i]t is also our understanding that you chose not to attend your functional evaluation on July 30." (Brown letter dated August 8, 1997.) The inclusion of this sentence in the same paragraph as the explanation of the no call/no show policy is not enough to establish a causal connection between Plaintiff's *filing* of a workers' compensation claim (rather than failing to appear at a medical evaluation) and her discharge.

Ms. Brown's letter clearly indicates that Defendant terminated Plaintiff's employment because she violated the no call/no show policy. "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Cont'l Broad. Co.,* 957 F.2d 368, 373 (7th Cir. 1992). Plaintiff has presented no evidence that supports a conclusion that Ms. Brown did not honestly believe that Plaintiff had violated the no call/no show policy or that Defendant's proffered reason for discharging her was a lie or a pretext for retaliation. As a result, Plaintiff has failed to provide evidence, argument, or authority connecting her discharge with her filing of a worker's compensation claim. Therefore, the Court grants Defendant's motion for summary judgment as to Plaintiff's retaliatory discharge claim.

### B. The ADA Claim(s) (Count II)
#### 1. Background

The ADA prohibits discrimination against, and requires an employer to reasonably accommodate the known limitations of, an otherwise qualified employee with a disability. 42 U.S.C. §§ 12112(a), (b). Determining whether the employee is a "qualified employee with a disability" is a threshold issue for all ADA claims. *Leisen v. City of Shelbyville,* 153 F.3d 805, 807 (7th Cir. 1998). Once a plaintiff has established that she is a qualified individual with a

disability, she may show that her employer discriminated against her in either of two ways: by presenting evidence of disparate treatment or by showing a failure to reasonably accommodate. *Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 572 (7th Cir. 2001). Where these two claims diverge is in the method of proof. Disparate treatment can be shown either with direct evidence or indirectly using the *McDonnell-Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, the *McDonnell Douglas* approach is not an appropriate method of proving a reasonable accommodation claim; instead, its *prima facie* case simply mirrors the statutory elements. *See Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996).

Plaintiff seems to be claiming that Defendant's termination of her employment constitutes both disparate treatment and a failure to accommodate under the ADA. That is, Defendant discharged her because of her alleged disability and also failed to provide her with the reasonable accommodation of allowing her adequate time to convalesce.[1]

Defendant argues that the Court should grant summary judgment in its favor because (1) as a threshold matter, Plaintiff failed to establish that she was a qualified person with a disability. Regarding the discriminatory discharge claim, Defendant contends that Plaintiff failed to establish (2) that Defendant treated her differently because of her disability, or (3) that Defendant's proffered reason for discharging Plaintiff was pretext. Regarding the reasonable accommodation claim, Defendant contends that (4) Plaintiff failed to establish that she had requested a reasonable accommodation, or that (5) Defendant refused to provide a reasonable accommodation.

---

[1] In her complaint, Plaintiff alleges that Defendant terminated her employment "because of Plaintiff's major medical handicap and condition, all the while giving the Plaintiff pretextural [(*sic*)] and untrue reasons for her termination." (Complaint, p. 3, ¶ 7.) In addition, she alleged that she asked Defendant to provide a job for her with appropriate accommodations, but Defendant refused. (Complaint p. 3, ¶¶ 8-9.) However, she apparently has abandoned the reasonable accommodation claim as articulated in the complaint and replaced it with a claim that Defendant failed to reasonably accommodate when it did not give her adequate time to convalesce.

In response, Plaintiff states that genuine issues of material fact exist regarding whether Defendant perceived Plaintiff as disabled, whether Plaintiff was substantially limited in the major life activity of working, and whether Defendant provided Plaintiff with the reasonable accommodation of allowing her time to convalesce from her back injury. Plaintiff has provided some evidence in the form of her doctor's clinical notes, but no argument or authority to support her conclusory statements. A skeletal argument, unsupported by relevant authority or reasoning, is merely an assertion which does not sufficiently raise the issue to merit the court's consideration. *See United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority . . . forfeits the point. We will not do his research for him.").

### 2. Whether Plaintiff was a Qualified Individual with a Disability

The Court notes that, when Plaintiff was first hired, Defendant knew she was unable to lift more than fifteen pounds, and they accommodated that restriction. Neither party has addressed this restriction and the Court assumes that it is not an issue in this case.

Determining whether an employee is protected by the ADA is a threshold issue that requires an affirmative response to two questions. First, does the employee have a disability as that term is defined in the ADA? *See* 42 U.S.C. § 12102(2); *Leisen,* 153 F.3d at 807. Second, is the employee an "otherwise qualified individual"? *Id.*

An employee may establish that she has a disability by showing that she (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment. *See* 42 U.S.C. § 12102. The employee bears the burden of proving that she is disabled. *DeLuca v. Winer Indus., Inc*., 53 F.3d 793, 797 (7th Cir. 1995). "Major life activities" are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). Furthermore, a person is "substantially limited" if she is "[u]nable to perform a major life activity" or "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared

to . . . the average person." 29 C.F.R. § 1630.2(j)(1). When determining whether an impairment is substantial, courts should consider the nature and severity of the impairment, its duration or expected duration, and its permanence or long-term impact. *Hamm v. Runyon*, 51 F.3d 721, 725 (7th Cir. 1995).

A "qualified individual" is one "who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

### a. "A Qualified Individual". . .

Defendant argues that Plaintiff cannot show that she could perform the functions of the job with a reasonable accommodation.

The plaintiff bears the burden of coming forward with evidence that tends to show that she could, with or without reasonable accommodation, perform the essential functions of her job. *Weigel v. Target Stores*, 122 F.3d 461, 467-68 (7th Cir. 1997). "[A]bsent some such affirmative showing of the plaintiff's ability to perform the essential functions of the position, there will be no genuine issue of material fact as to whether the plaintiff is a 'qualified individual' and the employer will be entitled to judgment as a matter of law." *Id.*

The medical evidence before the Court includes reports from Drs. Kohlmann and Fletcher that Plaintiff was able to return to work with modified duty, and Dr. Fehrenbacher's testimony that he did not give Plaintiff a work-release note at her August 1, 1997, appointment and that, based on his clinical notes, it would not have been appropriate for him to do so. Thus, a reasonable jury could conclude that Plaintiff was able to work (with modified duty) at the time of her discharge and, therefore, that Plaintiff was a qualified individual.

### b. . . ."With a Disability"

Defendant next argues that Plaintiff was not disabled at the time of her discharge. Defendant bases this argument on (1) reports by Drs. Kohlmann and Fletcher on June 17 and July 17, 1997, respectively, that Plaintiff was able to return to work with modified duty, and (2) the lack of a work-release note from Dr. Fehrenbacher after Plaintiff's July 28, 1997, appointment.  The only information that Defendant arguably had between July 28 and August 8, 1997, is a note from Plaintiff dated August 1, 1997, in which she said that Dr. Fehrenbacher told her she may be released to work later.  Plaintiff's note to Gail Price is not the same as a doctor's work-release note or report regarding Plaintiff's inability to work.  Thus, between July 7 and August 15, 1997, Defendant had no direct information from Dr. Fehrenbacher regarding Plaintiff's condition.  In fact, Dr. Fehrenbacher stated that he would not have provided her with a work-release note at that time based on his evaluation at that appointment. (Fehrenbacher dep., p. 14.)

Defendant also relies on case law, including *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 614 (5th Cir. 2001) (stating that a back condition that prevented the employee from sitting or standing in one place for more than one hour was not considered a disability under the ADA), and *Mickelsen v. Albertson's, Inc.*, 226 F. Supp. 2d 1238, 1250 (D. Ida. 2002) (stating that an employee who was restricted to lifting twenty-five pounds was not substantially limited in a major life activity and therefore had failed to show that she was not able to work in a broad class of jobs or even her job with her employer).

Plaintiff has not expressly indicated which of her major life activities was substantially limited.  Based on her statement that she was "unable to work" because of her back injury, the Court assumes that she is claiming that she was limited in the major life activity of "working."

Regarding the question of whether Plaintiff's ability to work was "substantially limited," Plaintiff has provided evidence in the form of Dr. Fehrenbacher's clinical notes and her testimony that she was not worked since May 1997.  In her argument, Plaintiff states in conclusory fashion that she was "substantially limited, temporarily, in her major life activity of working, while

13

restricted from working by her primary care physician, Dr. Fehrenbacher" (Plaintiff's Additional Material Facts, #30, ¶ 8), and that "[t]here is a genuine issue of material fact regarding whether or not the Plaintiff was substantially limited in the major life activity of working" (#30, p. 7, ¶ 5).

Plaintiff bears the burden of proving that she was disabled. *DeLuca,* 53 F.3d at 797. To determine whether Plaintiff's impairment substantially limits a major life activity, the Court considers the nature and severity of the impairment, its duration or expected duration, and its permanence or long-term impact. *Hamm*, 51 F.3d at 725. Here, Drs. Kohlmann and Fletcher both reported that Plaintiff was able to return to work with modified duty. In addition, Dr. Fehrenbacher's clinical notes for July 28, 1997, and his testimony regarding those notes, show that Plaintiff's impairment did not substantially limit her ability to work at the time of her discharge: Dr. Fehrenbacher expected Plaintiff to be back to work by the end of the week. Furthermore, Dr. Fehrenbacher's previous clinical notes indicate that Plaintiff's back had been gradually improving. Based on this evidence, and in the absence of any authority or significant argument by Plaintiff, the Court concludes that Plaintiff has failed to show that she was substantially limited in the major life activity of working at the time of her discharge or to raise a factual issue regarding this issue. Because Plaintiff has failed to show that she was "substantially limited" in her ability to work, the Court concludes that she was not "disabled" for purposes of ADA protection. Accordingly, the Court grants summary judgment in favor of Defendant Plaintiff's ADA claims.

### IV.  Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#27)**.

ENTER this 9th day of December, 2005.

s/ DAVID G. BERNTHAL  
U.S. MAGISTRATE JUDGE